IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES D. SALVAGIO and FAY M. BOURGEOIS, AS TRUSTEES OF GULF COAST ARMS, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-2183 |
| MADISON REALTY CAPITAL, L.P, WILLIAM G. LAWHON, STEPHEN C. PAINE and BEVERLY VEAL, EACH AS SUBSTITUTE TRUSTEES, | § § § § § | |
| Defendants. | § § | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ON HEARING FOR PRELIMINARY INJUNCTION

Pending is Plaintiffs' Motion for Temporary Injunction (Document No. 9), to which Defendant Madison Realty Capital, L.P. ("Madison") has filed its response in opposition. On June 21, 2011, the Court conducted an evidentiary hearing at which both parties by and through their counsel presented certain affidavits and exhibits that were received in evidence. Having considered the motion, response, the evidence admitted during the hearing, the arguments of the parties, the parties' supplemental briefing, and the applicable law, the Court makes the following findings of fact and conclusions of law.

## Findings of Fact

**From a preponderance of the evidence presented at the evidentiary hearing, the Court finds as follows:**

1.  Plaintiffs James Salvagio and Fay Bourgeois are trustees of Gulf Coast Arms ("Gulf Coast"), owner of a HUD-subsidized apartment complex located at 6603 Hirsch Road, Houston, Texas 77026 (the "Property").

2.  Plaintiffs are citizens of Texas.

3.  Although it is Plaintiffs who seek a preliminary injunction in this proceeding, neither of the trustees James Salvagio and Fay Bourgeois testified or even in person attended the evidentiary hearing on their motion.

4.  On March 20, 2006, in exchange for a $4 million loan from Madison, Plaintiffs, as trustees of Gulf Coast, executed and delivered to Madison a Real Estate Lien Note (the "Note") whereby Gulf Coast promised to pay Madison the principal sum of $4 million, plus interest thereon as provided in the Note. Payment of the Note is secured by a Deed of Trust of even date with the Note, conveying the Property to a trustee, which Deed of Trust was recorded in the Official Real Property Records of Harris County, Texas on March 24, 2006. The Deed of Trust is subject to a prior first mortgage lien on the Property in favor of the Department of Housing and Urban Development

2

("HUD").  Plaintiff James Salvagio, individually, executed a Guaranty, guaranteeing the payment of the indebtedness evidenced by the Note.

5.    The Note had an original maturity date of March 20, 2007.

6.    Plaintiffs have made no principal or interest payments on the Note since November 2008.

7.    There is now past due and owing on the Note in excess of $5,060,000, including interest.

8.    Due to Gulf Coast's default in its payment obligations under the Note, Madison posted the Property for foreclosure sale on December 7, 2010, but Gulf Coast on the eve of that sale filed for Chapter 11 bankruptcy.  *See* In re Gulf Coast Arms, a Non-Profit Trust, No. 10-40929-H1-11 (Bankr. S.D. Tex. Apr. 29, 2011).

9.    On April 29, 2011, pursuant to an agreement of HUD, Gulf Coast, and Madison, the Bankruptcy Court dismissed Gulf Coast's bankruptcy case with prejudice to re-filing in bankruptcy for 180 days.

10.   With the Note still in default, Madison again posted the Property for a foreclosure sale set for June 7, 2011.

11.   Plaintiffs filed this action against Madison in state court on June 6, 2011, and obtained a Temporary Restraining Order (the "TRO") enjoining the June 7, 2011 foreclosure sale.

3

12. Plaintiffs named William G. Lawhon, Stephen C. Paine, and
    Beverly Veal as additional defendants solely in their capacity
    as substitute trustees.

13. Madison is not a citizen of Texas.

14. Madison removed the case to this Court and, on Monday,
    June 13, 2011, the Court granted Madison's motion to clarify
    the TRO to permit Madison to post notice for a July 5, 2011
    foreclosure sale, which it has since done, and the Court set
    for hearing on June 21, 2011, Plaintiffs' Motion for
    Preliminary Injunction.

15. Plaintiffs allege three reasons for issuance of a preliminary
    injunction: (1) that sale of the Property under the Deed of
    Trust is barred by the four-year statute of limitations;
    (2) that Madison's lien was released as a result of two
    alleged instances of assignment of the Deed of Trust without
    an assignment of the Note; and (3) that Madison will be
    unjustly enriched if foreclosure is permitted because
    "Plaintiffs . . . stand to lose approximately $1,800,000.00,
    that in equity, justice, and law, belongs to Plaintiffs."

16. Gulf Coast, Salvagio, and Madison, the original parties to the
    Note, its Guaranty, and the Deed of Trust, agreed to extend
    the due date of the Note for one year, until March 20, 2008,
    by a letter agreement dated March 30, 2007 (the "Letter
    Agreement").

4

17. The Letter Agreement was made in response to Gulf Coast's request that Madison agree to extend the maturity date of the Note.

18. Madison later agreed further to forebear from exercising its rights under the Note and Deed of Trust until July 31, 2008, pursuant to a May 2, 2008 Forbearance Agreement between it, Gulf Coast, and Salvagio, in which the parties acknowledged that Gulf Coast had defaulted on the Note by failing fully to repay the Loan on its new maturity date of March 20, 2008.

19. Madison agreed to forbear even longer, until December 31, 2008, in the First Amendment to Forbearance Agreement.

20. Plaintiffs and Gulf Coast sought and received the benefit of the Letter Agreement, the Forbearance Agreement, and the First Amendment to Forbearance Agreement.

21. Neither the Letter Agreement, the Forbearance Agreement, or the First Amendment to Forbearance Agreement was filed for record in the Harris County clerk's office.

22. Madison executed by and through its authorized representative, Mark Bahiri, an allonge to the Note (the "First Allonge") dated April 7, 2006, whereby Madison indorsed the Note to CapitalSource Finance, LLC ("CapitalSource").  The First Allonge on its face is valid, authentic, and enforceable.

23. There is no evidence that the First Allonge was a product of fraud, or that it was executed on any date other than the date it bears of April 7, 2006.

24.  There is nothing about the signature of Mark Bahiri on the First Allonge to suggest that it was signed by anyone other than the same Mark Bahiri whose like signatures are found also on Madison's assignment to CapitalSource of the Deed of Trust and the companion Assignment of Leases and Rents, both dated May 10, 2006.

25.  Madison executed and delivered the May 10, 2006 assignment, entitled "Assignment of Deed of Trust," to CapitalSource as collateral security for Madison's obligations to CapitalSource.  The instrument expressly provided that it "is given as collateral security for the obligations of [Madison] to [CapitalSource] pursuant to that certain Credit Agreement between [them] dated as of November 23, 2005," and that the "collateral assigned hereunder will be re-assigned to [Madison]" upon fulfillment of all of Madison's obligations to CapitalSource under the November 23, 2005 agreement.

26.  Madison indorsed the Note to CapitalSource in the First Allonge as collateral for its independent obligations to CapitalSource.

27.  CapitalSource, by and through its authorized representative, Sue J. Choi, executed an allonge to the Note (the "Second Allonge"), dated August 6, 2008, by which CapitalSource indorsed the Note without recourse back to Madison.  The Second Allonge on its face is valid, authentic, and enforceable.

28.  The Second Allonge evidences that CapitalSource understood its
     authority to indorse the Note back to Madison, which is
     consistent with proof of Madison's previous indorsement of the
     Note to CapitalSource by the First Allonge.

29.  CSE  Mortgage  LLC  ("CSE"),  Successor  in  Interest  to
     CapitalSource, LLC, executed by and through its authorized
     representative, Sue J. Choi, an allonge (the "Third Allonge"),
     dated October 13, 2009, by which CSE, as successor in interest
     to CapitalSource, indorsed the Note without recourse to
     Madison.  The Third Allonge on its face is valid, authentic,
     and enforceable as to any interest in the Note that CSE may
     have  derived  from  its  being  successor  in  interest  to
     CapitalSource.

30.  There is no evidence that CSE was the successor in interest of
     CapitalSource as early as August 6, 2008, the date of the
     Second Allonge.

31.  There  is  no  evidence  that  either  return  of  the  Note  by
     indorsement to Madison was invalid.

32.  On March 25, 2011, CapitalSource transferred the Deed of Trust
     that it held as collateral back to Madison following Madison's
     fulfillment of its obligations to CapitalSource.

33.  Plaintiff James Salvagio, as Managing Trustee of Gulf Coast,
     reported the Property as currently having a value of $5.5
     million in his Verified Schedule of Real Property dated
     December 20, 2010, and signed by him under penalty of perjury

in Gulf Coast's Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court.

34. During pendency of its Chapter 11 bankruptcy proceeding, Gulf Coast on February 3, 2011, entered into an Agreement to sell the Property to Marquis Acquisitions, Inc., for $5.5 million, subject to approval of the Bankruptcy Court.

35. The Bankruptcy Court did not act to approve the sale of the Property to Marquis before Gulf Coast's bankruptcy proceeding was dismissed, but Salvagio's sworn Bankruptcy Schedule and his sales contract with Marquis provide the most credible current estimates of the Property's approximate value.

36. As of the date of the preliminary injunction hearing, the Note remained in default with more than $5,060,000 due and owing, including past due interest.

37. In addition to Madison's lien, the Property is encumbered by two other liens: (1) a lien superior to Madison's in favor of HUD in the approximate amount of $100,000, and (2) a lien junior to Madison's in favor of Mr. Samuel J. Henderson, Jr., in the amount of $1.5 million.

38. There is no evidence that the substitute trustee's sale of the Property at the posted foreclosure will entail any irregularity to cause the Property to be sold for a grossly inadequate price.

39. Plaintiffs have not shown themselves or Gulf Coast to have equity of $1.8 million in the Property.

8

40.   Plaintiffs have not shown themselves or Gulf Coast to have any equity in the Property over and above the total indebtedness that encumbers the Property.

41.   After Madison's accession to Plaintiffs' requests for an extension of the due date of the Note and additional forbearances on Madison's part, and with Plaintiffs still in default and having made no payments of principal or interest for more than two years, Plaintiffs filed a Chapter 11 bankruptcy proceeding, since dismissed, to avoid a foreclosure sale posted for December 7, 2010, by use of the automatic stay of the Bankruptcy Act, and later filed this suit to obtain a temporary restraining order the day before the posted June 7, 2011, foreclosure sale.

42.   In what appears to be a far darker undertaking, Plaintiffs James D. Salvagio and Fay M. Bourgeois on January 25, 2010, filed in the County Clerk's office of Fayette County, Texas, the following documents, all said to be prepared by Plaintiff James D. Salvagio:

> (1) "Notice of Correction to Deed of Trust, Substitution of Trustee, and Full Reconveyance," wherein Plaintiff Salvagio purports (a) to name himself, Plaintiff Salvagio, as the current Trustee of the Deed of Trust; (b) to name Gulf Coast Arms as the current beneficiary of the Deed of Trust instead of Madison; and (c) to name CapitalSource Finance LLC as the holder in due course of the Note secured by the Deed of Trust instead of Madison;

> (2) "Notice of Rescission of Signatures," in which Plaintiffs Salvagio and Bourgeois purport to

9

"rescind any and all signatures that I may have placed" on the Note, Deed of Trust, and other related documents on May 20, 2006;

(3) "Notice of Revocation of Power of Attorney" purporting to "revoke, cancel, and annul all Powers of Attorney," signed by Plaintiffs Salvagio and Bourgeois "with, to and/or for" Madison and its attorneys; and

(4) "Notice of Right to Cancel," bearing signatures for Plaintiffs Salvagio and Bourgeois and sworn to by them under oath, purporting to cancel the Note and Deed of Trust under the Truth in Lending Act.

43. All four of the foregoing putative documents, all dated January 25, 2010, purport to be sworn to by one or both Plaintiffs Salvagio and Bourgeois in the presence of a Notary Public.

44. Each of the foregoing four documents purporting variously "to correct," "to rescind," "to revoke," and "to cancel" the Note and/or Deed of Trust and/or related instruments, were discovered by Madison and attached to Madison's motion filed in Bankruptcy Court to dismiss Gulf Coast's Chapter 11 proceeding as having been commenced in bad faith.

45. Each of the foregoing four documents filed for record by Plaintiff Salvagio in Fayette County, Texas, is a spurious document, unilaterally prepared and filed by Plaintiff Salvagio.

46. Plaintiffs offered no evidence of any non-fraudulent purpose for Plaintiff Salvagio to have filed the foregoing four documents for record in Fayette County, Texas, on January 25,

2010.  Indeed, Plaintiffs' counsel represented that he had no prior knowledge of such until he saw Madison's evidence.

47.   In a balancing of the equities on whether a preliminary injunction should issue, and taking into consideration all of the Findings of Fact, the equities weigh heavily, in fact, overwhelmingly against the issuance of a preliminary injunction.  Although Plaintiffs will be harmed by loss of the property at a foreclosure sale, Madison will suffer far greater harm by a continued, unjustified delay of the exercise of its rights under the agreements Plaintiffs made with Madison.

48.   Under the totality of the facts and based on the evidence presented, it is in the public interest that an injunction be denied.

### Conclusions of Law

**The Court makes the following conclusions of law:**

1.   Because Defendants William G. Lawhon, Stephen C. Paine, and Beverly Veal were named solely in their capacity as substitute trustees, their citizenship is not considered for diversity jurisdiction purposes.  *See* 28 U.S.C. § 1441(a); Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 572-73 (5th Cir. 2004).

2.   Defendants William G. Lawhon, Stephen C. Paine, and Beverly Veal must be dismissed without prejudice. TEX. PROP. CODE ANN. § 51.007(c) (West 2007).

3.   The Court has diversity jurisdiction over the parties and the subject matter of this case.

4.   To obtain a preliminary injunction, an applicant must establish:

> that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

> Pendergest-Holt v. Certain Underwriters at Lloyd's of London, 600 F.3d 562, 568-69 (5th Cir. 2010) (citing Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)).

5.   Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S. Ct. at 376.

6.   Although Texas law governs Madison's intended foreclosure under the Deed of Trust, and also governs Plaintiffs' causes of action, the Note by its express choice of law clause is to be "governed by, and construed and enforced in accordance with, the internal laws of the State of New York."

7.   The Texas Civil Practice and Remedies Code provides:

> (b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real

12

property lien must be made not later than four
years after the day the cause of action accrues.

. . .

(e) If a series of notes or obligations or a note
or obligation payable in installments is secured by
a real property lien, the four-year limitations
period does not begin to run until the maturity
date of the last note, obligation, or installment.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.035 (West 2002).  This is

the four-year statute of limitations that applies to the sale

of real property at foreclosure under a deed of trust.

8.    "On the expiration of the four-year limitations period, the

real property lien and a power of sale to enforce the real

property lien become void."  Id. § 16.035(d).

9.    Although section 16.036 of the Civil Practice and Remedies

Code requires recording and acknowledgment of an extension of

the maturity date on a debt underlying a real property lien,

"*as between the parties*, and those holding under them in

subordination to the mortgage, informal, unrecorded extensions

of the debt, not meeting the standards of section 16.036 . . .

suffice also to extend the lien."  Davidson v. Fed. Deposit

Ins. Corp., 44 F.3d 246, 254 (5th Cir. 1995) (emphasis added);

*see also* The Cadle Co. v. Butler, 951 S.W.2d 901, 910 (Tex.

App.--Corpus Christi 1997, no pet.) (stating that "[o]ral

extensions of a debt's maturity are valid and enforceable

between the parties to the agreement," and that "[s]uch

13

agreements are enforceable between the parties despite their
failure to comply with statutory provisions" (citing, *inter
alia*, <u>Yates v. Darby</u>, 133 Tex. 593, 603-04, 131 S.W.2d 95, 101
(1939))).

10.    Section 16.035 of the Civil Practice and Remedies Code sets
       forth the purpose of the recording and acknowledgment
       requirements of section 16.036:

> The running of the statute of limitations is not
> suspended against a bona fide purchaser for value,
> a lienholder, or a lessee who has no notice or
> knowledge of the suspension of the limitations
> period and who acquires an interest in the property
> when a cause of action on an outstanding real
> property lien has accrued for more than four years,
> except as provided by:
>
>> (1) Section 16.062, providing for suspension
>> in the event of death; or
>>
>> (2) Section 16.036, providing for extensions
>> of real property liens.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(c).

11.    The purpose of the statutory requirement that an extension of
       a debt secured by a real property lien be acknowledged and
       recorded is to protect good-faith purchasers or subsequent
       lienholders of the real property who: (1) have no notice or
       knowledge of the extension agreement *and* (2) acquire an
       interest in the property after the expiration of the four-year
       statute of limitations. *See* <u>The Cadle Co.</u>, 951 S.W.2d at 910
       (noting that extensions that do not "comply with statutory

provisions . . . are binding against subsequent lienholders only if the prior lien did not appear to be barred of record when the later lien was acquired" (citing <u>Mercer v. Daoran Corp.</u>, 676 S.W.2d 580, 582 (Tex. 1984); <u>Hughes v. Hess</u>, 172 S.W.2d 301, 304 (Tex. 1943))); *accord* <u>Davidson</u>, 44 F.3d at 254 ("To be sure, Texas law strives to protect from secret tollings or extensions the unknowing bona fide purchaser who acquires the land when the limitations period on the debt has facially expired."); <u>Jolly v. Fid. Union Trust Co.</u>, 118 Tex. 58, 72, 10 S.W.2d 539, 541 (1928) ("It is our opinion that the above-quoted provisions [of the predecessor to section 16.035(c)] were not intended by the Legislature to have application where an unbarred lien is extended by the parties to it, and no other persons are affected by the extension, except those holding under voluntary conveyance from the mortgagor in subordination to the lien.").

12. Plaintiffs were parties to the extension agreement with Madison, with actual notice of the Letter extending the Note's original March 20, 2007 maturity date for one year, until March 20, 2008, and therefore Madison is not barred from foreclosing on the Property due to Plaintiff's default at any time within four years after March 20, 2008.

13. Notwithstanding the lack of conditional language in Madison's indorsement to CapitalSource in the First Allonge, the

statements in the "Assignment of Deed of Trust" dated May 10, 2006, and the affidavit of Brian Shatz, are both reliable evidence that Madison indorsed the Note to CapitalSource as collateral. *See* <u>Mantovani v. Fast Fuel Corp.</u>, 494 F. Supp. 72, 76 (S.D.N.Y. 1980) ("It is evident that such a collateral agreement, although denominated as an assignment of interest, falls far short of the type of 'perfected transaction' which marks a valid assignment." (citing <u>Miller v. Wells Fargo Bank</u>, 540 F.2d 548, 557-58 (2d Cir. 1976))); <u>Frensdorf v. Stumpf</u>, 30 N.Y.S.2d 211, 218 (N.Y. Sup. Ct. 1941) (holding that, despite an assignment being written in absolute terms, evidence extraneous to the assignment may show that the assignment was in fact a pledge as collateral security).

14. An indorsement as collateral constitutes a conditional assignment (i.e., a pledge) under New York law, pursuant to which Madison, as the conditional assignor, or pledgor, retained the right to enforce the Note. *See* <u>Miller</u>, 540 F.2d at 559 (applying New York law) ("Thus, the essential feature of a valid 'conditional assignment for purposes of security' is that title to the collateral . . . is retained by the assignor subject to his performance of an independent obligation owed to the assignee."); <u>Malloney v. John Hancock Mut. Life Ins. Co.</u>, 271 F.2d 609, 614 (2d Cir. 1959) (noting that "numerous decisions of this circuit recognize the

16

validity of conditional assignments under New York law," and that such an assignment constitutes "a transfer by way of security for a loan of claims to become payable in the future, [and] transfer is conditioned upon the assignor's default and repayment of the loan . . . ."); *accord* <u>Sheehan v. Mun. Light & Power Co.</u>, 151 F.2d 65, 70 (2d Cir. 1945) (applying New York law to determine that a former holder of notes who had "endorsed the notes in blank without recourse and pledged them to secure a loan" from another party could, upon regaining possession of the notes from the other party, properly bring suit upon them).

15. The same rule would apply under Texas law. *See* <u>Randolph v. Citizens Nat'l Bank of Lubbock</u>, 141 S.W.2d 1030, 1034-35 (Tex. Civ. App.--Amarillo 1940, writ dism'd judgm't cor.) ("As a general rule the pledgee of commercial paper holds it as a trustee for the pledgor and, as such trustee, it is his duty to collect it when it becomes due . . . . It does not follow, however, that the pledgor is not permitted to collect the indebtedness, enforce the security and file suit if necessary under an agreement with the pledgee which entitles him to do so.");[1] *accord* <u>McAllen State Bank v. Tex. Bank & Trust Co.</u>,

---

[1] Even if Texas law governed Madison's authority, and if Madison's agreement with CapitalSource did not permit Madison to collect and enforce the pledged Note, it was Plaintiffs' burden to prove that fact; they made no attempt to do so.

17

433 S.W.2d 167, 171 (Tex. 1968) (stating elements of a pledge of property, including that "possession of the pledged property pass[es] from the pledgor to the pledgee," and that "legal title of the pledged property remain[s] in the pledgor").

16. Madison at all times therefore retained authority to enter into the Letter Agreement with Plaintiffs.

17. Plaintiffs sought from Madison and received the benefit of the extension agreement, and are therefore estopped from challenging Madison's authority to enter into the Letter Agreement. *See* Eckland Consultants, Inc. v. Ryder, Stilwell Inc., 176 S.W.3d 80, 87 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (Hanks, J.) (noting that "quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects," and holding that the appellant, a party to a contract, was estopped from arguing that another entity was neither a party nor a third-party beneficiary of the contract where the appellant "accepted the benefits of its contract" with respect to the other party).

18. Plaintiffs have not shown a substantial likelihood that they will prevail on the merits of their statute of limitations claim.

18

19. The First Allonge, like the Note itself, is not required to be notarized or witnessed.

20. Because there is no evidence that the First Allonge is a product of fraud or is otherwise suspect, there was no assignment of the Deed of Trust without a prior indorsement of the Note.

21. Because there is no evidence that either return indorsement of the Note to Madison is invalid, Madison has authority to conduct a foreclosure sale under the Deed of Trust. *See* Bittinger v. Wells Fargo Bank NA, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010) ("[U]nder Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded." (citing JWD, Inc. v. Fed. Ins. Co., 806 S.W.2d 327, 329-30 (Tex. App.--Austin 1991, no writ))).

22. Plaintiffs have not shown a substantial likelihood that they will prevail on the merits of their claim that Madison's lien on the property was released and that the Deed of Trust was rendered invalid.

23. To recover for an inadequate price at a foreclosure sale, there must be "some irregularity in the foreclosure which caused or contributed to cause the real property to be sold for a grossly inadequate price." Savers Fed. Sav. & Loan Ass'n v. Reetz, 888 F.2d 1497, 1503 (5th Cir. 1989); *see also*

19

Am. Sav. & Loan Ass'n v. Musick, 531 S.W.2d 581, 587 (Tex. 1975).

24.   An "anticipatory wrongful foreclosure" claim is not recognized in Texas. *See* Peoples v. BAC Home Loans Servicing, LP, No. 4:10-CV-489-A, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011) (finding it "unnecessary to devote substantial attention" to an "anticipatory wrongful foreclosure" claim because "such a claim is not a recognized cause of action in Texas" (citations omitted)); *see also* Ayers v. Aurora Loan Servs., LLC, --- F. Supp. 2d ---, 2011 WL 2120000, at *3 (E.D. Tex. May 27, 2011) ("Indeed, an inadequate sale price is an element of [a] wrongful foreclosure claim. . . . Because no sale occurred, Plaintiff fails to state a claim."); Ginther-Davis Ctr., Ltd. v. Houston Nat'l Bank, 600 S.W.2d 856, 865 (Tex. Civ. App.--Houston [1st Dist.] 1980, writ ref. n.r.e.) (holding that the appellants' contention--that "unless the foreclosure sale is enjoined they will lose their substantial equity and investment in the property, apparently because they fear the sale will bring a price greatly under the fair market value of the land"--failed because they presented no evidence, and because "even if proven, such allegations would not in themselves be grounds requiring the issuance of an injunction").

25.   Plaintiffs have not shown a substantial likelihood that they
      will prevail on the merits of their unjust enrichment claim.

26.   While foreclosure of the Property will entail Plaintiffs' loss
      of the Property, a potential "harm" to which Plaintiffs agreed
      when they pledged the Property as security for a $4 million
      loan upon which they wholly defaulted some three years ago,
      Madison will suffer substantial harm from the continued delay
      of the exercise of its rights.   The continued accrual of
      interest, to which Plaintiffs point as the reason Madison is
      not harmed, is meaningless when interest is not paid year
      after year and the total debt begins to exceed the value of
      the Property pledged to secure its payment.   Plaintiffs have
      paid nothing on this sizable debt since November, 2008, almost
      three years ago.   Gulf Coast's bankruptcy action, which
      avoided one foreclosure sale, and followed by this action--
      which avoided another foreclosure sale posted for this month--
      have provided ample opportunity to assess all of Plaintiffs'
      arguments for further delay, and none has merit.   The recent
      discovery of Plaintiffs' filings of spurious documents in
      Fayette County, Texas, purporting to pertain to this Note and
      Deed of Trust, portends further legal harm to Madison--
      directly caused by Plaintiffs--if a preliminary injunction
      issues.

27.   Given the totality of the facts proven, Madison will continue
      to suffer substantial and unjustified harm if a preliminary

injunction is issued.

28. Accordingly, Plaintiffs have not shown that the balance of the equities is in their favor; much to the contrary, the equities weigh overwhelmingly against the issuance of an injunction.

29. Plaintiffs have not shown a substantial likelihood that they will prevail on the merits of their case; their claim of threatened injury does not outweigh the far greater harm to Madison if an injunction issues; and Plaintiffs have not shown that the granting of a preliminary injunction under the totality of the facts proven here would not disserve the public interest.

30. Plaintiffs have failed to carry their burden of proof and persuasion that Madison's sale of the Property at foreclosure should be preliminarily enjoined.

31. If any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such; if any of the foregoing Conclusions of Law constitute Findings of Fact, they are adopted as such.

### Order

For the reasons set forth in the above Findings of Fact and Conclusions of Law, it is

ORDERED that Plaintiffs' claims against Defendants William G. Lawhon, Stephen C. Paine, and Beverly Veal, named as substitute

22

trustees, are DISMISSED without prejudice.    It is further

ORDERED  that  Plaintiffs'  Motion  for  Temporary  Injunction
(Document No. 9) is in all things DENIED.

The Clerk will enter this Order and send copies to all parties
of record.

SIGNED at Houston, Texas on this **27**th day of June, 2011.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE