IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES D. SALVAGIO and FAY M. | § | |
| BOURGEOIS, AS TRUSTEES OF | § | |
| GULF COAST ARMS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2183 |
| | § | |
| MADISON REALTY CAPITAL, L.P, | § | |
| WILLIAM G. LAWHON, STEPHEN | § | |
| C. PAINE and BEVERLY VEAL, | § | |
| EACH AS SUBSTITUTE TRUSTEES, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER ON PENDING MOTIONS
## AND RESET OF DOCKET CALL

Pending, among other motions ruled on herein, are Defendant's
Motion for Summary Judgment (Document No. 45) and Plaintiff's
Motion for Leave to Amend Complaint (Document No. 58).[1]  After
carefully considering the motions, responses, reply, and the
applicable law, the Court concludes as follows.

---

[1] Plaintiff's Motion to Enlarge Time for Plaintiff to File His
Response to Defendant's Motion for Summary Judgment (Document
No. 54) is DENIED, inasmuch as the Court previously enlarged the
time for Plaintiff's response by more than 30 days, and Plaintiff
has failed to show good cause for an additional enlargement of
time.  See FED. R. CIV. P. 6(b)(1).  Plaintiff's Motion for
Enlargement of Time to File a 15-Minute Late Response to Defendant
Madison Realty Capital, L.P.'s Motion for Summary Judgment
(Document No. 62) is GRANTED.  Plaintiff's Motion to Compel
Mediation (Document No. 78) is DENIED.

I.   <u>Background</u>

Plaintiff James Salvagio ("Plaintiff"), acting in his capacity as trustee of Gulf Coast Arms ("Gulf Coast"),[2] brought this action to prevent Defendant Madison Realty Capital, L.P.'s ("Defendant" or "Madison") foreclosure of a HUD-subsidized apartment complex located at 6603 Hirsch Road, Houston, Texas 77026 (the "Property"), owned by Gulf Coast.

On March 20, 2006, for value received, Plaintiff and Bourgeois, as trustees of Gulf Coast, executed and delivered to Defendant a Real Estate Lien Note (the "Note") payable to Defendant in the principal sum of $4 million, plus interest thereon as provided in the Note.[3]  Payment was secured by a Deed of Trust of even date with the Note, which was recorded in the Official Real Property Records of Harris County, Texas on March 24, 2006.[4]  The Deed of Trust is subject to a prior first mortgage lien on the Property in favor of the Department of Housing and Urban Development ("HUD").[5]  The Note had an original maturity date of

---

[2] Fay M. Bourgeois ("Bourgeois") was originally included in this lawsuit also acting as a trustee on behalf of Gulf Coast Arms. Document No. 1.   Plaintiff's Second Amended Complaint removed Bourgeois as a complainant, leaving Trustee Salvagio as sole Plaintiff.  Document No. 42.

[3] Document No. 45, ex. A at I-7.

[4] <u>Id.</u>, ex. I-B.

[5] <u>Id.</u>, ex. I-B at 14.   James Salvagio also executed a Guaranty, personally guaranteeing payment of the Note.   Judge

2

March 20, 2007. In response to Gulf Coast's request for an extension,[6] Defendant by letter agreement dated March 30, 2007 (the "Letter Agreement") extended the maturity date to March 20, 2008. Defendant later agreed further to forbear from exercising its rights under the Note and Deed of Trust until July 31, 2008, pursuant to a May 2, 2008 Forbearance Agreement between the parties, which acknowledged that Gulf Coast had defaulted on the Note by failing fully to repay the Loan on its new maturity date of March 20, 2008.[7] Defendant agreed to forbear even longer, until December 31, 2008, in the First Amendment to Forbearance Agreement.[8]

After Gulf Coast defaulted,[9] Defendant posted the Property for foreclosure sale on December 7, 2010, but Gulf Coast on the eve of that sale filed for Chapter 11 bankruptcy. *See* In re Gulf Coast Arms, a Non-Profit Trust, No. 10-40929-H1-11 (Bankr. S.D. Tex. Apr. 29, 2011). On April 29, 2011, pursuant to an agreement of HUD, Gulf Coast, and Defendant, the Bankruptcy Court dismissed Gulf

---

Melinda Harmon of this Court last year entered a Final Judgment against Salvagio on his personal guaranty. Id., ex. I-C; Madison Realty Capital, L.P. v. Salvagio, Civ. A. No. H-09-3558, 2011 WL 666507 (S.D. Tex. Feb. 14, 2011) (Harmon, J.).

   [6] Id., ex. I-A at 2; ex. I-D.

   [7] Id., ex. I-F.

   [8] Id., ex. I-G.

   [9] Plaintiff never made any principal or interest payments on the Note after November 2008. Id., ex. I-P.

Coast's bankruptcy case with prejudice to re-filing in bankruptcy for 180 days.  Id.[10]  With the Note still in default, Defendant again posted the Property for a foreclosure sale set for June 7, 2011, and Plaintiff again forestalled foreclosure by filing this action against Defendant in state court on June 6, 2011, obtaining a Temporary Restraining Order (the "TRO") enjoining the June 7, 2011 foreclosure sale.[11]  Defendant removed the case to this Court and, after an evidentiary hearing, the Court denied a preliminary injunction.[12]  The Property was sold at foreclosure for $1 million to 6603 Hirsch Road Houston LLC, a Texas limited liability company set up to take title to the apartments.[13]

## II.  Plaintiff's Motion for Leave to Amend Complaint

Plaintiff, who by February 2, 2012, had already filed three complaints in this case, including his Second Amended Complaint that the Court permitted to be filed at least six weeks after the cut-off date to amend pleadings, now moves to file a Third Amended Complaint long after the deadline for amended pleadings.  The evident purpose of this proposed iteration of a fourth complaint is to add allegations that the Note and Deed of Trust, pursuant to

---

[10] Document No. 10, ex. T.

[11] Document No. 1, exs. B & C.

[12] Document No. 17.

[13] Document No. 45, ex. I-O.

which Plaintiff received for his benefit $4 million, were void for
the ostensible reason that they contravene certain HUD regulations
which, he says, are identified in the Deed of Trust Gulf Coast
signed with HUD.  HUD, Plaintiff contends, requires HUD approval
before Gulf Coast could further encumber the Property and, alleging
that HUD did not approve, Plaintiff contends that the Madison loan
instruments are void.  Plaintiff also argues this as the reason to
deny Defendant's Motion for Summary Judgment, which motion was
filed two months *before* Plaintiff moved to change the theory of his
case with another complaint.

Plaintiff is required to show good cause for modifying a
deadline in the Docket Control Order and further must show that, at
such a late date, justice requires that leave be granted to file an
amendment that adds a new substantive claim never before pled or
argued.  FED. R. CIV. P. 15(a)(2), 16(b)(4); *see also* RE/MAX Int'l,
Inc. v. Trendsetter Realty, LLC, 655 F. Supp. 2d 679, 695 (S.D.
Tex. 2009) (Rosenthal, J.) (finding that when a motion to file an
amended complaint comes after the deadline for such amendments, the
Court first looks to Rule 16 and then to Rule 15).  In this
instance, Plaintiff--who already was allowed to file a Second
Amended Complaint after the December 15, 2011, deadline for
amending--has not shown good cause to file yet another tardy
amendment nor has he shown that justice requires such.

First, the proposed new allegations and new theory of his lawsuit are based entirely upon facts well known to Plaintiff from the beginning.  He argues that the HUD regulatory agreement was recorded in the public records of real property, Harris County, Texas, on March 30, 1970.  The regulation upon which he relies, evidently 24 C.F.R. § 200.85(a), requires that his HUD mortgage "contain a covenant against the creation by the mortgagor of liens against the property superior or inferior to the lien of the mortgage except for such inferior lien as may be approved by the Commissioner in accordance with provisions of § 200.71; . . . ."  The regulation on its face constrains Plaintiff's conduct, not Defendant's.  Plaintiff knew of his alleged obligations to HUD when he borrowed $4 million from Madison in March, 2006.  If he contends that his failure to comply with HUD regulations voids his Loan Documents with Madison, he could have pled that claim when he filed this suit or proposed it in his First or Second Amended Complaints. But it is way too late now, after expiration of the deadline for amendments, the deadline for the identification of experts, and even *two months* after the deadline for the filing of motions for summary judgment.  Defendant did timely file its Motion for Summary Judgment on March 2, 2012, and to allow Plaintiff to change the theory of his lawsuit two months afterward would be unfairly prejudicial and not serve the interests of justice.

Second, Plaintiff's proposed new allegations that the Note and Deed of Trust are void because of Plaintiff's violation of a HUD regulation is a contention that HUD itself has never made and that this Court has expressly rejected.   In Plaintiff's bankruptcy proceeding, HUD filed a motion to join in full support of Madison's motion to dismiss Plaintiff's bankruptcy case--a motion that was based entirely on Madison having an interest in the Property as the beneficiary of a valid Deed of Trust securing payment of the Note. It was the Bankruptcy Court's Order dismissing Plaintiff's bankruptcy case--which HUD requested and agreed to--that caused the automatic stay to be lifted and permitted Madison to conduct its foreclosure sale under the same Deed of Trust that Plaintiff now wants to allege was void because of a HUD regulation.   Moreover, Savagio unsuccessfully made the identical argument that he now wants to plead in this case when he sought to avoid liability on his personal Guaranty of the Note.   Judge Harmon rejected his theory as a matter of law.   *See* <u>Madison Realty Capital</u>, 2011 WL 666507, at *5, 7.   Given that exactly the same, identical facts are present in this case, and the identical legal argument is advanced here as Savagio argued before Judge Harmon, the doctrine of *stare decisis* would preclude any different result.   Thus, an amendment to allege that Plaintiff's own violation of a HUD regulation voided the Note and Deed of Trust, leaving Plaintiff $4 million richer, would be a futile amendment.   For all of the foregoing reasons,

Plaintiff's Motion for Leave to Amend is DENIED.  FED. R. CIV. P. 16(b)(4); 15(a)(2).

### III.  Summary Judgment

#### A.  Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).

"The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.

B.    Objections to Summary Judgment Evidence

Defendant objects to several of the documents provided by Plaintiff as summary judgment evidence.[14]   Plaintiff has not responded to any of these objections. Defendant's objections to Document Nos. 59-3, 59-4, 59-13, 59-14, and 60 are sustained. Plaintiff did not authenticate any of these documents nor did he provide a certified copy of the Assignment of Leases and Rents (Document No. 59-3). Defendant's objection to Document No. 59-11,

---

[14] Document No. 69 at 2.

the Regulatory Agreement between HUD and Gulf-Coast, is overruled because that document has the signature and seal of the Harris County Clerk, and thus appears to be self-authenticating. *See* FED. R. CIV. P. 902. Defendant does not provide any reason as to why the Court should doubt the veracity of this document.

C.  Declaratory Judgment and Wrongful Foreclosure Claims

Plaintiff seeks a declaratory judgment (1) that the Deed of Trust was assigned without a corresponding assignment of the underlying Note, and therefore is void; (2) that the Deed of Trust is no longer enforceable because the statute of limitations barred the claim on and after March 20, 2011; and (3) that the Court determine "who is the rightful and correct holder in due course of the Note," contending that because DD 2010 Finance LLC, rather than Defendant, appears to be the holder of the Note.[15] Plaintiff further asserts a claim of wrongful foreclosure.

1.  Defendant's Right to Enforce the Note and Deed of Trust

In response to Defendant's Motion for Summary Judgment, Plaintiff offers no evidence sufficient to raise a fact issue and makes no argument in support of his pleading that the Deed of Trust is void because it was assigned without a corresponding assignment of the underlying Note. In his response to Defendant's Motion for

---

[15] Document No. 42 at 4.

Summary Judgment, Plaintiff says only that he "incorporates by reference as if fully set forth herein, the evidence and arguments presented to the Court in its briefing submitted in support of its application for temporary injunctive relief."  That evidence and those arguments were thoroughly considered by the Court and were found to be without merit in the Court's Order signed June 27, 2011.  The documents in Defendant's summary judgment evidence, which the Court also examined during the preliminary injunction hearing, demonstrate that Defendant in April 2006 executed an allonge to the Note to a third party as collateral for Defendant's independent obligations to the third party, and later assigned the Deed of Trust as additional collateral, to be reassigned to Madison when Madison's obligations to the third party were fulfilled.  When Madison had fulfilled those obligations, the third party and its successor in interest executed allonges to the Note back to Defendant.  The third party successor-in-interest, with the concurrence and authority of DD 2010 (which evidently had mistakenly received an assignment of the mortgage), also assigned the mortgage back to Defendant, which assignment was recorded April 21, 2011.

Madison's pledging of the Note and Deed of Trust to secure its own obligations, after which the Note and Deed of Trust were returned to Madison, did not "void" Plaintiff's obligations to Madison.  Although Texas law governs Madison's foreclosure under

the Deed of Trust, as well as Plaintiff's causes of action, the Note by its express choice of law clause is to be "governed by, and construed and enforced in accordance with, the internal laws of the State of New York."   An indorsement as collateral constitutes a conditional assignment (i.e., a pledge) under New York law, pursuant to which Madison, as the conditional assignor, or pledgor, retained the right to enforce the Note.  *See* <u>Miller v. Wells Fargo Bank Intern. Corp.</u>, 540 F.2d 548, 559 (2d Cir. 1976) (applying New York law) ("Thus, the essential feature of a valid 'conditional assignment for purposes of security' is that title to the collateral . . . is retained by the assignor subject to his performance of an independent obligation owed to the assignee."); <u>Maloney v. John Hancock Mut. Life Ins. Co.</u>, 271 F.2d 609, 614 (2d Cir. 1959) (noting that "numerous decisions of this circuit recognize the validity of conditional assignments under New York law," and that such an assignment constitutes "a transfer by way of security for a loan of claims to become payable in the future, [and] transfer is conditioned upon the assignor's default and repayment of the loan . . . ."); *accord* <u>Sheehan v. Mun. Light & Power Co.</u>, 151 F.2d 65, 70 (2d Cir. 1945) (applying New York law to determine that a former holder of notes who had "endorsed the notes in blank without recourse and pledged them to secure a loan" from another party could, upon regaining possession of the notes from the other party, properly bring suit upon them).

The same rule applies under Texas law.  *See* <u>Randolph v. Citizens Nat'l Bank of Lubbock</u>, 141 S.W.2d 1030, 1034-35 (Tex. Civ. App.--Amarillo 1940, writ dism'd judgm't cor.) ("As a general rule the pledgee of commercial paper holds it as a trustee for the pledgor and, as such trustee, it is his duty to collect it when it becomes due . . . . It does not follow, however, that the pledgor is not permitted to collect the indebtedness, enforce the security and file suit if necessary under an agreement with the pledgee which entitles him to do so."); *accord* <u>McAllen State Bank v. Tex. Bank & Trust Co.</u>, 433 S.W.2d 167, 171 (Tex. 1968) (stating elements of a pledge of property, including that "possession of the pledged property pass[es] from the pledgor to the pledgee," and that "legal title of the pledged property remain[s] in the pledgor").  In sum, Plaintiff has not raised a genuine issue of material fact, and argues no law, to support his claim that the Deed of Trust is void by reason of its prior assignments as collateral for Madison's third party obligations.  Likewise, there is no evidence that DD 2010 is the holder of the Note or, for that matter, that the Note was ever assigned to such an entity.  Accordingly, Defendant is entitled to summary judgment denying Plaintiff's first and third requests for declaratory judgment.

2.   Statute of Limitations

Plaintiff's remaining request for declaratory judgment is that the Court declare that the Deed of Trust is no longer enforceable because the statute of limitations expired on March 20, 2011, four years after maturity of the Note.   Plaintiff has made no argument in its response to Defendant's Motion for Summary Judgment on his limitations claim except to "incorporate[] by reference, as if fully set forth herein, the evidence and arguments presented to the Court in its briefing submitted in support of its application for temporary injunctive relief."   The Court considered at length Defendant's submissions at the hearing on preliminary injunction and found that Plaintiff's statute of limitations argument is without merit.   It is uncontroverted that by letter agreement, at Plaintiff's request, Madison agreed on March 30, 2007, to extend the maturity date of the Note from March 20, 2007, to March 20, 2008.[16]   That document alone was sufficient to extend the statute

---

[16] Plaintiff argued in the preliminary injunction hearing that, because Madison's signature does not appear on the letter agreement exhibited on Madison's letterhead, and even though Salvagio signed it *twice*, both as Trustee for Gulf Coast *and* Individually, that the extension was therefore not effective.   The summary judgment evidence, however, is uncontroverted that Plaintiff accepted the benefits of the extension letter and Plaintiff is estopped now to reject it.   *See* Eckland Consultants, Inc. v. Ryder, Stilwell Inc., 176 S.W.3d 80, 87 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (Hanks, J.) (noting that "quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects," and holding that the appellant, a party to a contract, was estopped from arguing that another entity was neither a party

14

of limitations date to March 20, 2012, well after the foreclosure sale conducted on July 5, 2011. Moreover, it is uncontroverted that Madison and Plaintiff entered into a First Amendment to Real Estate Lien Note dated February 15, 2008, in which Plaintiff, among other things, expressly agreed that the Note and Loan Documents continued in full force and effect and Plaintiff expressly ratified and confirmed the same. Further, Madison and Plaintiff entered into a forbearance agreement in which Madison agreed to forbear from exercising its rights under the Note until July 31, 2008, in order to give Gulf Coast an opportunity to obtain financing to pay the loan; and on or about July 31, 2008, Madison and Plaintiff entered into a First Amendment to Forbearance Agreement wherein Madison agreed to extend its forbearance until December 31, 2008. The Court finds from the uncontroverted summary judgment evidence that Madison was not barred by the four years statute of limitations from enforcing its rights under the Deed of Trust by selling the Property at foreclosure on July 5, 2011.

3.  Wrongful Foreclosure

Plaintiff's wrongful foreclosure claim is premised upon the "defect" that "Defendant possessed no legal authority to foreclose the property" because Defendant pledged the Note and Deed of Trust

---

nor a third-party beneficiary of the contract where the appellant "accepted the benefits of its contract" with respect to the other party).

to secure for a while its own third party obligations.   "The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.--Corpus Christi 2008, no pet.). For the reasons set forth above, Defendant's pledge of the Note and Deed of Trust to secure for a while its own third party obligations did not invalidate or "void" the Note and Deed of Trust, nor prevent Defendant from foreclosing in accordance with the terms of those documents.  There is no summary judgment evidence to raise a fact issue of any defect in the foreclosure sale proceeding and hence, no causal connection between a defect and any alleged grossly inadequate selling price.  A separate issue is raised on whether the sales price at foreclosure was equivalent to the Property's fair market value, but that question--even if sold for a grossly inadequate price--does not constitute a wrongful foreclosure in the absence of some connection to a defect in the foreclosure proceedings. See Terra XXI, Ltd. v. Harmon, 279 S.W.3d 781, 788 (Tex. App.--Amarillo 2007, pet. denied) ("Evidence must exist that the irregularity caused or contributed to the sale of property for a grossly inadequate price") (citing Am. Sav. & Loan Ass'n of Houston v. Musick, 531 S.W.2d 581, 587 (Tex. 1975)). Plaintiff's argument fails as a matter of law, and Defendant is

16

entitled to summary judgment denying Plaintiff's wrongful foreclosure claim.

D.    Deficiency Judgment and Offset

Defendant moves for summary judgment on its counterclaim for a deficiency judgment, and Plaintiff replies that Gulf Coast is entitled to an offset because the Property was sold for less than its fair market value and that fact issues preclude summary judgment for a deficiency.  Texas law requires that:

> If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of the claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sales price.

Tex. Prop. Code Ann. § 51.003(c) (West 2007).[17]

Defendant provides evidence that on the date of foreclosure sale the total principal due on the Note was $3,150,000.00, the total interest due was $2,112,266.68, for a total of $5,262,266.68,

---

[17] Texas law governs this issue because under New York law, "[a] motion for deficiency judgment is part of, and not separate from, the foreclosure action," Steuben Trust Co. v. Buono, 677 N.Y.S.2d 852 (N.Y. App. Div. 1998), which action is governed by Texas law under the terms of the Deed of Trust.  Document No. 45, ex. I-A at ¶ 6; ex. I-b at ¶ 15.

plus interest accruing.[18]   Defendant also provides affidavit testimony supporting $127,889.31 in collection costs, which includes attorneys' fees.[19]   Defendant sold the Property at foreclosure for $1 million.  For purposes of its motion for summary judgment, however, Defendant asks the Court to find a fair market value of $4.5 million.  The latter value is based on the opinion of Plaintiff's designated expert, whose opinion Defendant--not Plaintiff--placed in the summary judgment record.  Defendant seeks a deficiency based on the difference between a market value of $4.5 million and an indebtedness, including attorney's fees, of $5,390,155.99, resulting in a claimed deficiency of $890,155.99, plus accruing interest.

Plaintiff points to evidence of Salvagio's estimated fair market value of $5.5 million given by him under penalty of perjury in Gulf Coast's bankruptcy proceeding on December 20, 2010.  This Court, when it denied Plaintiff's motion for preliminary injunction, made a finding of fact that Plaintiff had reported the Property to have that value, which is part of the record properly considered on the present motion.[20]  Valuation of real property is inherently a fact question, and an owner ordinarily may express an opinion on value.  *See* LaCombe v. A-T-O, Inc., 679 F.2d 431, 434

---

[18] Document No. 45, ex. I at 7-8, ex. I-P.

[19] Document No. 46, ex. II.

[20] Finding of Fact No. 33, Document No. 17, at 7, 8.

n. 4 (5th Cir. 1982) ("the testimony of an owner as to the value of his property is admitted under the Federal Rules of Evidence under Fed. R. Evid. 702").  It appears, therefore, that the fair market value of the Property on the date of the foreclosure sale has not been established as a matter of law.

There is also uncertainty--which concomitantly suggests fact issues--on the amounts of indebtedness or obligations that are secured by liens or encumbrances that were not extinguished by the foreclosure.  *See* § 51.003(c).  Defendant concedes that as of the foreclosure date, even Madison itself "was not clear as to whether HUD considered the Flex Subloans to be secured obligations under HUD's first lien Deed of Trust or unsecured obligations of GCA to HUD."  Document No. 45 at 20.

Given the presence of an inherently factual issue--which is contested with at least some evidence--as to the fair market value of the Property on the date of the $1 million foreclosure sale, and the admitted unknowns as to whether roughly $2 million in HUD Flex Subloans were secured or were unsecured obligations to HUD, and hence whether they were extinguished by the foreclosure sale, Defendant/Counter-Plaintiff has not shown by uncontroverted summary judgment evidence the specific amount of deficiency, after allowing for any statutory offsets to which Plaintiff is entitled under § 51.003(c), for which Defendant/Counter-Plaintiff is entitled to judgment.

19

E.   Wrongful Injunction: Claim on Bond

        Plaintiff on June 6, 2011, obtained from the 125th Judicial
District Court of Harris County, Texas, a temporary restraining
order enjoining a foreclosure sale of the Property, the condition
for which was the deposit of a $3,000 Bond.[21]  The Court is advised
by the Clerk of Court that Plaintiff filed a cash bond of $3,000
into the Registry of the State Court, and the District Clerk of
Harris County advises that the $3,000 cash bond remains in the
Registry and has accrued interest of $46.05.  The TRO proved to be
wrongfully issued and was dissolved when this Court denied
Plaintiff's motion for preliminary injunction.[22]  In the meanwhile,
however, the wrongfully issued TRO issued by the state court
prevented Defendant from conducting its foreclosure sale posted for
June 7, 2011, which resulted in further delay, losses, and costs to
Defendant.   Because Plaintiff was not entitled to a temporary
restraining order, which Plaintiff caused to be wrongfully issued,
Defendant is entitled to recover the amount of the bond, and all
interest accrued thereon.   *See* DeSantis v. Wackenhut Corp., 793
S.W.2d 670, 685-86 (Tex. 1990) (superceded by statute on other
grounds).

---

[21] Document No. 47, ex. II-E.

[22] Document No. 17.

IV.  <u>Order</u>

For the foregoing reasons, it is

ORDERED that Plaintiff's Motion for Leave to Amend Complaint (Document No. 58) is DENIED; Defendant Madison Realty Capital, L.P.'s Motion for Summary Judgment (Document No. 45) is GRANTED, except for the request for a deficiency judgment in the amount of $890,155.99, plus accruing interest; and Plaintiff shall TAKE NOTHING and its claims are DISMISSED WITH PREJUDICE, except only for its claim to an offset based upon TEX. PROP. CODE ANN. § 51.003(c) as to the amount of Defendant's requested deficiency judgment.  It is further

ORDERED that Counter-Plaintiff Madison Realty Capital, L.P. shall have and recover the full cash bond in the sum of $3,000.00, plus all interest accrued thereon, which Bond was filed by Plaintiff in the Registry of the 125th Judicial District Court of Harris County, Texas, in Cause No. 2011-33626, <u>James D. Salvagio and Fay M. Bourgeois, as Trustees of Gulf Coast Arms v. Madison Realty Capital, L.P., William G. Lawhon, Stephen C. Paine, and Beverly Veal, each as Substitute Trustees</u>, where the Bond remains on deposit, and the District Clerk of Harris County, Texas may rely on this Order to pay over such cash Bond of $3,000.00 and all accrued interest thereon to Defendant Madison Realty Capital, L.P., upon a proper receipt being given therefor.

Remaining for trial are the amount of the deficiency, if any, to which Defendant/Counter-Plaintiff Madison is entitled to have judgment against Plaintiff/Counter-Defendant, and the amount of the offset, if any, to which Plaintiff may be entitled under TEX. PROP. CODE ANN. § 51.003(c). These issues are ready to be tried, and Defendant has pending its Motion to Reset Docket Call (Document No. 80), which Plaintiff opposes. After careful consideration of the submissions, it is

ORDERED that Docket Call is RESET as follows:

> Date: _October 12, 2012_
> Time: _4:00 p.m._
>
> United States Courthouse
> Courtroom 11D
> 515 Rusk Avenue
> Houston, Texas 77002

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this _10TH_ day of October, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

22