IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES D. SALVAGIO and FAY M. BOURGEOIS, AS TRUSTEES OF GULF COAST ARMS, § § § § | | |
| Plaintiffs, § § | | |
| v. § § | CIVIL ACTION NO. H-11-2183 | |
| MADISON REALTY CAPITAL, L.P, WILLIAM G. LAWHON, STEPHEN C. PAINE and BEVERLY VEAL, EACH AS SUBSTITUTE TRUSTEES, § § § § § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

This case came on for trial on October 25, 2012, whereupon the parties agreed to submit the case to the Court on one question of law, namely, whether James Salvagio, as trustee of Gulf Coast Arms ("Gulf Coast"), effectively waived Gulf Coast's right to claim an offset under Texas Property Code section 51.003, in the offset waiver language found in the Letter Agreement, the First Amendment to Real Estate Lien Note, the Forbearance Agreement, and/or the First Amendment to Forbearance Agreement. The parties mutually agreed and stipulated that if the Court finds that Gulf Coast made no lawful and effective waiver, Defendant Madison Realty Capital, L.P. ("Madison") is entitled to a deficiency judgment in the total amount of $2,890,155.90, as of the date of the foreclosure sale,

plus a default interest rate of 24% per annum accruing from the date of the foreclosure sale to the date of judgment. The parties further mutually agreed and stipulated that if the Court finds that Gulf Coast did make a lawful and effective waiver, Madison is entitled to a deficiency judgment in the total amount of $4,390,155.90, as of the date of the foreclosure sale, plus a default interest rate of 24% per annum accruing from the date of the foreclosure sale to the date of judgment. Madison agreed to waive its claim to attorneys' fees incurred after the foreclosure sale. The parties further agreed that upon the entry of judgment the Court should dissolve Plaintiff's Notice of *Lis Pendens*. The Court accepted the agreements made by the parties in open court. Based on the agreements of the parties and the applicable law, the Court concludes as follows.

I. Discussion

It is undisputed that James Salvagio, in his capacity as trustee of Gulf Coast Arms, signed and agreed to the Letter Agreement,[1] the First Amendment to Real Estate Lien Note, the Forbearance Agreement, and the First Amendment to Forbearance

---

[1] The Letter Agreement was also signed by Fay Bourgeois, as trustee. Document No. 45, ex. D.

Agreement.[2]  The Letter Agreement dated March 30, 2007, extended the maturity date of the Note, and recites:

> Each of the Borrower and the Guarantor hereby acknowledges and agrees that neither the Borrower nor the Guarantor *has any offsets*, defenses, claims, or counterclaims against the Lender with respect to its liabilities and obligations due and owing to the Lender and that, to the extent the Borrower or the Guarantor *has or ever had any such offsets*, defenses, claims, or counterclaims, each of the Borrower and the Guarantor hereby specifically **WAIVES AND RELEASES** any and all rights to such offset, defenses, or counterclaims.

Document No. 45, ex. D (emphasis in italics added; other emphasis in original).  The First Amendment to the Real Estate Lien Note, signed February 15, 2008, contains a section entitled, "No claims," which states:

> Borrower acknowledges, certifies, represents and warrants that it *has no claims, offsets* or defenses in connection with the Loan or any other sums *heretofore paid or payable pursuant to*, or in connection with the Note, mortgage or any other Loan Documents.  Borrower waives, releases, and forever discharges Lender, Lender's agents, officers, directors, and employees, from . . . (ii) all rights of set-off, defenses, claims, causes of action and any other bar to the enforcement of the Loan Documents or this Amendment or the collection of any sums due and payable pursuant thereto.

---

[2] It was agreed in their Admissions of Fact in the Joint Pretrial Order that these agreements were made.  Document No. 86 at 4.  They were exhibited to the Court in the summary judgment record.

3

<u>Id.</u>, ex. E (emphasis in italics added).  The Forbearance Agreement, signed on May 2, 2008, contains a section entitled "**<u>Waiver of Claims</u>**," which states:

> The Borrower and Guarantor hereby acknowledge and agree that *they have no offsets*, defenses, claims, or counterclaims against the Lender or the Lender's officers, directors, employees, attorneys, representatives, predecessors, successors, and assigns with respect to the Obligations, or otherwise, and that if the Borrower or Guarantor *now have, or ever did have, any offsets*, defenses, claims, or counterclaims against the Lender or the Lender's officers, directors, employees, attorneys, representatives, predecessors, successors, and assigns, whether known or unknown, at law or in equity, *from the beginning of the world through this date and through the time of execution of this Agreement, all of them are hereby expressly* **WAIVED**, and the Borrower and Guarantor each hereby **RELEASE** the Lender and the Lender's officers, directors, employees, attorneys, representatives, predecessors, successors, and assigns from any liability therefor.

<u>Id.</u>, ex. F (emphasis in italics added; other emphasis in original). Finally, the First Amendment to the Forbearance Agreement, signed on July 31, 2008, has a section entitled "<u>Waiver</u>," which states:

> Borrower and Guarantor acknowledge, certify, represent and warrant that they *have no claims, offsets or defenses in connection with the Debt or any other sums heretofore paid* or payable pursuant to, or in connection with the Note, Mortgage or any other Loan Documents (as defined in the Note). *Borrower and Guarantor waive*, release, and forever discharge Lender, Lender's agents, officers, directors, and employees, from . . . (ii) *all rights of set-off, defenses*, claims, causes of action and any other bar to the enforcement of the Loan Documents or this Agreement or the collection of any sums due and payable pursuant thereto. In addition, Borrower and Guarantor acknowledge and agree that *all amounts paid to date to*

>   *Lender*, including but not limited to payments at nominal interest rate, default rate or late charges *have been duly earned by Lender without right of setoff*, credit or refund.

Id., ex. G (emphasis in italics added).

Plaintiff first argues that its agreement in these documents was not effective to waive its right to claim an offset under Texas Property Code section 51.003 because allowing such a waiver would contravene public policy. The Texas Property Code allows a party against whom a deficiency judgment is sought to seek an offset against the deficiency judgment "in the amount by which the fair market value, less the amount of the claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sales price." TEX. PROP. CODE ANN. § 51.003(c) (West 2007).[3] Plaintiff makes no cogent argument for his public policy contention and, indeed, both the Fifth Circuit and Texas appellate courts have rejected such a notion. *See, e.g.*, LaSalle Bank Nat'l Ass'n v. Sleutel, 289 F.3d 837, 839-42 (5th Cir. 2002) (finding that public policy did not prohibit contractual waiver of right to offset under Texas Property Code § 51.003); Interstate 35/Chisam Road, L.P. v. Moayedi, --- S.W. 3d ---, 2012 WL 3125148, at *8-9 (Tex. App.--Dallas Aug. 2, 2012, no pet. h.) (same); Segal v. Emmes

---

[3] The Court previously held that Texas law governs this issue, and neither party disputes that conclusion.

Capital, L.L.C., 155 S.W.3d 267, 278-81 (Tex. App.--Houston[1st Dist.] 2004, no pet. h.) (holding same with respect to similarly worded § 51.005 and stating that, "[t]he Legislature thus knew how to grant a non-waivable right in chapter 51, but chose not to do so in sections 51.003 and 51.005, the provisions granting valuation and offset rights to debtors and guarantors. The omission of such language in section 51.005 thus implies that the rights that it confers are not so fundamental that they cannot be waived.").

Plaintiff's second argument is that the documents lack specificity and therefore were not effective to waive Plaintiff's right to seek an offset under § 51.003. The question here is whether the waiver language employed in March 2007, and February, May, and July of 2008, was effective *prospectively* to waive an offset right under § 51.003 that did not arise in Salvagio's favor until July 6, 2011, when Madison sold the Property at foreclosure for only $1 million. None of the four documents on which Madison relies purports to make a forward-looking waiver of any future offset that may accrue and, of course, none refers specifically to waiving any offset that may arise under § 51.003. *Compare, e.g.*, Segal, 155 S.W.3d at 278-81 (enforcing waiver of "all rights, remedies, claims, and defenses based upon or related to §§ 51.003, 51.004, and 51.005 of the Texas Property Code") (underlining in original). Instead, as can be seen from the italicized language in each of the pertinent excerpts from the four documents quoted at

6

pages 3 and 4 above, the references are to claims and offsets at present or in the past, referring to those offsets that the borrower or guarantor "has," or "has or ever had," and the like. The borrower disclaims having any offsets, and then waives and releases them as well. The expansive, declarative language of the forbearance agreement signed May 2, 2008, captures best what Madison and Salvagio were agreeing in these documents: the borrower agreed he had no offsets, and that if he did have any offsets, "whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Agreement, all of them are hereby expressly **WAIVED**, . . ." (emphasis in original).

In contrast, the cases relied on by Defendant involved waivers not only to the date of execution but broad enough to encompass offsets that "may" accrue prospectively, such as that under § 51.003. Segal, cited above, is a specific example in which § 51.003 is specifically mentioned, but the other cases cited by Defendant are also not limited to the present-tense and past-tense language found in the documents signed by Salvagio. Instead, they also contemplate future setoffs. See LaSalle, 289 F.3d at 840 (section 51.003 setoff held waived by clause that Guarantor "expressly waives and relinquishes all rights and remedies *now or hereafter accorded* by applicable law . . ."); Haggard v. Bank of Ozarks Inc., 668 F.3d 196, 202 (5th Cir. 2012) (section 51.003

7

setoff waived by language precluding borrower from 'any defenses, setoffs, or counterclaims which *may be available* to Borrower or any other person or entity'"); <u>Moayedi</u>, --- S.W. 3d ---, 2012 WL 3125148, at *8-9 (waiving "any defense . . . that the Guarantor *may or might have* . . ."; <u>Tran v. Compass Bank</u>, No. 02-11-00189-CV, 2012 WL 117859, at *2 (Tex. App.--Fort Worth Jan. 12, 2012, no pet. h.) (waiver of "any rights or defenses based, in whole or in part, upon an offset by any one or more of the Borrowers or Guarantors against any obligation or Indebtedness *now or hereafter owed*" effective to waive § 51.003 setoff). The waiver language used by Defendant in its forbearances with Salvagio does not have the kind of prospective, or forward-looking, or contingent waiver language that would permit the Court to hold as a matter of law that the parties mutually agreed that the borrower in 2008 waived a future statutory offset that did not arise under Section 53.001 until 2011.

II. <u>Order</u>

Pursuant to the stipulation of the parties, and for the foregoing reasons and the conclusion that Gulf Coast Arms did not waive its right to an offset under Texas Property Code § 51.003, it is hereby

ORDERED that Defendant is entitled to a deficiency judgment against Plaintiff James D. Salvagio, as Trustee of Gulf Coast Arms,

8

in the amount of TWO MILLION EIGHT HUNDRED NINETY THOUSAND ONE HUNDRED FIFTY-FIVE AND 90/100 DOLLARS ($2,890,155.90), plus simple interest accrued thereon at the default rate of 24% per annum from the foreclosure date of July 5, 2011, to the date hereof, in the amount of $927,383.72, for a total judgment of THREE MILLION EIGHT HUNDRED SEVENTEEN THOUSAND FIVE HUNDRED THIRTY-NINE AND 62/100 DOLLARS ($3,817,539.62).

A Final Judgment separately will be entered in Madison's favor for this sum, and the Notice of *Lis Pendens* is ordered DISSOLVED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 5TH day of November, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE